IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AHMED ABU IMRAN,
**Detainee, Camp Delta;**

NAJEEB AL HUSSEINI,
**Detainee, Camp Delta;**

MOIIAMMED AL NADOUR,
**Detainee, Camp Delta;**

MOHAMMED FAHREO,
**Detainee, Camp Delta;**

LAHCEN IKASRIEN,
**Detainee, Camp Delta;**

MOHAMMED MAZOZ,
**Detainee, Camp Delta;**

MOUSSA,
**Detainee, Camp Delta;**

ABDUL LATIF MOHAMMED NASSER,
**Detainee, Camp Delta;**

**SAID,**
**Detainee, Camp Delta;**

RIDOUANE SHAKUR,
**Detainee, Camp Delta;**

YOUNIS SHAKUR,
**Detainee, Camp Delta;**

TAREQ,
**Detainee, Camp Delta;**

OMAR DEGHAYES,
**as Next Friend of the above 12 Persons,**

**Petitioners,**

v.

No.

GEORGE WALKER BUSH,
President of the United States
The White House
1600 Pennsylvania Ave., N.W.
Washington, D.C. 20500

DONALD RUMSFELD,
Secretary, United States
Department-of Defense
1000 Defense Pentagon
Washington, D.C. 20301-1000

ARMY BRIG. GEN. JAY HOOD,
Commander, Joint Task Force - GTMO
Guantanamo Bay Naval Station
Guantanamo Bay, Cuba

ARMY COL. NELSON J. CANNON,
Commander, Camp Delta!
Guantanamo Bay Naval Station
Guantanamo Bay, Cuba

Respondents

All sued in their official capacities.

## PETITION FOR WRIT OF HABEAS CORPUS

1. Petitioners seek the Great Writ. They act on their own behalf or through a Next Friend. They are being held virtually *incommunicado* in Respondents' unlawful custody.

## JURISDICTION

2. Petitioners bring this action under 28 U.S.c. gg2241 and 2242, and invoke this Court's jurisdiction under 28 *V.S.C.* ~91331, 1651,2201, and 2202; 5 U.S.C. ~702; *as* well *as* the Fifth, Sixth, and Eighth Amendments to the United States Constitution, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, and customary international law. Because they seek dec1aratory relief, Petitioners also rely on F. R. Civ. P. 57.

3. This Court is empowered under 28 US.c. 92241 to grant the Writ of Habeas Corpus, and to entertain the Petition insofar as it is filed by Next Friends, under 28 U.S.c. 92242. This Court is further empowered to dec1are the rights and other legal relations of the parties herein by 28 U.S.c. 92201, and to effectuate and enforce declaratory relief by a11necessary and proper means by 28 U.S.C. 92202, as this case involves an actual controversy witlrin the Court's jurisdiction.

II
VENUE

4. Venue is proper in the United States District Court for the District of Columbia, since at least one respondent resides in the district, a substantial part of the events or omissions giving rise to the claim occurred in the district, at least one respondent may be found in the district, and a11 respondents are either officers or employees of the United States or any agency thereof acting in their official capacities. *28 V.S.C.* ~~ 1391(b); 1391(e).

III ,
PARTIES

5. Petitioners Ahmed Abu Imran, Najeeb *Al* Husseini, Mohammed *Al* Nadour, Mohammed Fahreo, Lahcen Ikasrien, Mohammed Mazoz, Moussa, Abdul Latif Mohammed Nasser, Said, Ridouane Shakur, Yaunis Shakur and Tareq are all Moroccan citizens, currently incarcerated and held in respondents' unlawful custody in Guantanamo Bay.

6. Petitioner Omar Deghayes is acting as next friend for the twelve Petitioners identified above because these Petitioners cannot secure access either to legal counselor the courts of the United States.

7. Respondent Bush is the President of the United States and Commander in Chief of the United States Military. Respondent Bush is ultimately responsible for Petitioners' unlawful detention. He is sued in his official capacity.

8. Respondent Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to either the November 13, 2001 Military Order or the President's authority as Commander in

Chief and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining the custody and control of the detained Petitioners. He is sued in his official capacity.

9. Respondent Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at GuaIitanamo. He has supervisory responsibility for the detained Petitioners and is sued in his official capacity.

10. Respondent Cannon is the Commander of Camp Delta, the U.S. facility where the detained Petitioners are presently held. He is the immediate custodian responsible for their detention, and is sued in his official capacity.

IV
STATEMENT OF FACTS

11. The detained Petitioners are not, nor have they ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind.

12. Petitioners are not, and never have been, members of Al Qaida or any other terrorist group. Prior to their detention, they did not commit any violent act against any American person or espouse any violent act against any American person or property. Nor were they involved in the ensuing anned confljct. They had no involvement, direct or indirect, in either the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaida or any terrorist group. They are not properly subject to the detention Order issued by the President. As they did not participate in the armed conflict at any point in time, they are not properly subject to the Executives's authority as Commander in Chief and under the laws and usages of war.

13. On infonnation and belief, Petitioners have had no terrorist training. They at no time voluntarily joined any terrorist force.

14. On information and belief, Petitioners were not initially taken into custody by American forces. They were taken into custody against their w:ill and handed over to the Americans. There is no credible evidence that they engaged in combat against American forces.

15. On information and belief, Petitioners promptly identified themselves by their correct names and nationality to the United States. They requested that the United States provide them with access to their families and to legal counsel. They were kept blindfolded against their will for lengthy periods while being taken involuntarily to Guant.inamo.

16. On infonnation and belief, Petitioners have been forced to provide involuntary statements to Respondents' agents both prior to and after their arrival at Guantanamo.

17. Petitioners have been terribly abused and tortured by Respondents' agents.

18. Petitioners have been held under conditions that violate their international and constitutional rights to dignity and freedom from cruel, unusual and degrading treatment or punishment. They have been housed throughout their detention in accommodation that fails to satisfy both domestic and internationally accepted standards of accommodation for any person subject to detention. They have been refused meaningful access to their families. They have not been provided with the opportunity fully to exercise their religious beliefs. They have been exposed to the indignity and humiliation of the cameras of the national and international press, brought to Guantanamo with the express consent and control of Respondents.

## The Detention Order

19. On November 13, 2001, Respondent Bush issued a Military Order authorizing indefinite detention without due process of law. The Order authorizes Respondent Rumsfeld to detain anyone Respondent Bush has "reason to believe";

> 1. is or was a member ofthe organization known as al Qaida;
>
> 11. has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or
>
> 111. has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See Military Order of November* 13, *2001.* President Bush must make this detennination in

writing. The Order was neither authorized nor directed by Congress, and is beyond the scope of the Jomt Resolution of September 18, 2001.

20. The Military Order vests the President with complete discretion to identify the individuals that fall within its scope. It establishes no standards governing the use of his discretion. Once a person has been detained, the Order contains no provision for the person to be notified of the charges he may face. On the contrary, the Order authorizes detainees to be held without charges. It contains no provision for detainees to be notified of their rights under domestic and international law, and provides neither the right to counsel, nor the right to consular access. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and no proV1slOn for appeal to an .Article III court. In fact, the Order expressly bars review by any court. The Order authorizes indefinite and unreviewable detention, based on nothing more than the President's written determination that an individual is subject to its terms.

21. The Military Order was promulgated in the United States and in this judicial district, the decision to detain Petitioners was made by Respondents in the United States and in this judicial district, the decision to detain Petitioners at Guantfmamo was made in the United States and in this judicial district, and the decision to continue detaining the Petitioners was, and is, being made by Respondents in the United States and in this judicial district.

22. Respondent Bush has never certified or determined in any manner, in writing or otherv.rise, that the detained Petitioners are subject to this detention order.

23. Petitioners are not properly subject to this detention order.

24. In the related case of *Rasul* v. *Bush*, 215 F. Supp. 2d 55 (D.D.C. 2002), Respondents contended that the men held in Guantanamo were being detained not pursuant to the President's Military Order but rather under the President's authority as Commander in Chief and under the laws and usages of war. However, Petitioners were not arrested or detained by the United States in the course of the anned conflict.

25. Petitioners, on information and belief, were not arrested in Afghanistan, but elsewhere, nowhere near the battlefield. Accordingly, Petitioners are not properly detained under the

President's authority as Commander in Chief and under the laws and usages of war.

Guantanamo Bay Nayal Station

26. On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray, at the United States Naval Base, in Guantanamo Bay, Cuba. In April 2002, all prisoners were transferred to a more pennanent prison facility in Guantanamo, Camp Delta. Guantanamo is a self-sufficient and essentially pennanent city with approximately 7,000 military and civilian residents under the complete jurisdiction and control of the United States. Guantanamo occupies nearly thirty-one square miles of land, an area larger than Manhattan, and nearly half the size of the District of Columbia. It has its own schools, generates its own power, provides its own internal transportation, and supplies its O\VIlwater. Offenses committed by both civilians and foreign nationals living on Guan1imamo are brought before federal courts on the mainland, where respondents enjoy the fun panoply of Constitutional rights.

27. The United States has occupied Guantanamo since 1903, and has repeatedly declared its intention to remain there indefinitely. For several decades, the United States has resisted claims of national sovereignty made by Cuba over Guantanamo, insisting that its occupation of the land is legal and will remain so in perpetuity, so long as the United States chooses to exercise dominion and control over the land. The area is now, and has been for many years, under exclusive United States jurisdiction.

28. Guantanamo has developed into a fully American enclave with all the residential, commercial, and recreational trappings of a small American city. The infrastructure is pennanent and complex, providing for a wholly self-sufficient American community. The "Gitmo Guide", available online, lists fifteen restaurants, a bowling alley, and a Baskin Robbins. *See* The Gitmo Guide, at http://\V\VW.geocities.comlPentagoni 6625/dining.html. Guantanamo contains an outdoor movie theater, a McDonald's and a mini-mall. http://www.cubaoet.org/CN ews/y02/j ao02/15e5 .hlm. Residents, as well as their children, enjoy a number of recreational activities and clubs, including the Boys Scouts, Cub Scouts, USA Girl Scouts, the Guantanarno Bay Little Theater Company, an Archery Club, a golf club and even a Star Trek

club. Residwts may participate in a number of different sports including golf, hunting, tennis, horseback riding, football, softball and soccer.

29. A small children's zoo has been established on the naval base which contains "goats, donkeys, iguanas and banana rats." To facilitate water recreation for the residents, the bay side beaches have been dredged and pooled to protect bathers from the undertow and swift tidal current in the bay.' "Gitmo boasts its own yacht club, which conducts races nearly every week ... [requiring] all boats ... to fly the United States flag"l The United States has established 'America's Slice of Cuba,'2 where the residents "live in American-style homes, shop for American products and drive American cars. They have cable TV and radio stations, and their children attend schools that could be found in any suburban neighborhood.,,3

30. In light of the foregoing, the United States Navy has accurately described Guantanarno as "a Naval reservation *which, for all practical purposes, is American territory.* Under the [lease] agreements, *the United States has for approximately [ninety] years exercised the essential elements of sovereignty over this territory,* without actually owning it. Unless we abandon the area or agree to a modification of the terms of our occupancy, we can continue'in the present status as long as we like. [According to the United States p]ersons on the reservation are amenable only to United States legislative enactments." *See* The History of Guantanarno Bay: An Online Edition (1964), available at http://www.nsgtmo.navy.mil/history.htm.

31. On or about January 11, 2002, the precise date unknown to counsel but known to Respondents, the United States military transferred the detained Petitioners to Guantanarno, where they have been held ever since, in the custody of Respondents Bush, Rumsfeld, Hood, and Cannon.

32. Since gaining control of the detained Petitioners, the United States military has held him

Theodore K Mason, *Across the Cactus Curtain* at 106 (1984) (Library of Congress Cataloging in Publication Data).

z *See* Tom Gibbs, *World Americas, America's Slice of Cuba* (BBC Online Network, Friday January 1.1999).

3 http://www.sun-sentine1.com/newsllocaVcubalsns-gitmo-galleryindex. photogal1ery *?col1=sfla-news-cuba-(Inside Guantanamo Bay Naval Station).*

virtually *incommunicado.* They have been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, though they have not been charged Vlfithan offense, nor have they been notified of any pending or contemplated charges. They have made no appearance before either a military or civilian tribunal of any sort, nor have they been provided counselor the means to contact counsel. They have not been infonned of their rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, or customary international law. Indeed, Respondents have taken the position that they should not be told of these rights. As a result, the detained Petitioners are completely unable either to protect, or to vindicate their rights under domestic and intemationallaw.

33. In published statements, Respondents Bush, Rumsfeld, and officers Lehnert and Carrico who preceded Hood and Cannon in their respective positions, indicated the United States may hold the detained Petitioners under these conditions indefinitely. *See, e.g.,* Roland Watson, THE TIMES (LONDON), Jan. 18,2002 ("Donald Rumsfeld, the U.S. Defence Secretary, suggested last night that al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. PRESS,Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held... 'We have to look at Camp X-ray as a work in progress...,' Lehnert told CNN. ... Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards'"); John Mintz, The WASH. Post, *Extended Detention In Cuba Mulled,* Feb. 13,2002 ("As the Bush administration nears completion of new rules for conducting military trials of foreign detainees, u.s. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a telTorist penal colony for many years to come.").[4]

[4] *See also* TIME MAG., *Welcome to Camp X-Ray,* Feb. 3, 2002:

> More curious still is the matter of the prisoners' ultimate fate. Rumsfeld has laid out four options: a military trial, a trial in U.S. criminal courts, return to their home countries for

## V
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (DUE PROCESS - FJFTH AMENDMENT TO THE UNITED STATES CONSTITUTION)

34. Petitioners incorporate all of the above paragraphs by reference.

35. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the Fifth Amendment to the United States Constitution. Respondent Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without Due Process of Law. Respondents Rumsfeld, Hood, and Cannon are likewise acting in violation of the Fifth Amendment, since they act at the President's direction. On its face, the Executive Order violates the Fifth Amendment.

### SECOND CLAIM FOR RELIEF
### (DUE PROCESS - FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION)

36. Petitioners incorporate all of the above paragraphs by reference.

37. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of the detained Petitioners to be free from arbitrary, prolonged, and indefinite detention, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. The Executive Order, as applied to Petitioners, violates the Fifth Amendment.

### THIRD CLAIM FOR RELIEF
### (DUE PROCESS - INTERNA TIONAL LAW)

38. Petitioners incorporate all of the above paragraphs by reference.

39. By the actions described above, Respondents, acting under color of law, have violated and continue to violate customary internatjonallaw, Arts. 9 and 14 of the International Covenant on Civil and Political Rights, and Arts. XXVIII, XXV, and XXVI of the American Dec1aration on

prosecution, or continued detention 'while additional intelligence is gathered.' The last seems a distinct possibility; the Pentagon plans to build 2,000 cells at Camp X-Ray.

the Rights and Duties of Man. Respondent Bush has ordered the prolonged, indefinite, and arbitrary detention of Petitioners, without legal process, in violation of binding obligations of the United States under international law. Respondents Rumsfeld, Hood, and Cannon are likewise acting in violation ofintemationallaw, since they act at the President's direction. On its face, the Executive Order violates international law.

FOURTH CLAIM FOR RELIEF
(DUE PROCESS - INTERNATIONAL LAW)

40. Petitioners incorporate all of the above paragraphs by reference.

41. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of the detained Petitioners to be free from arbitrary, prolonged, and indefinite detention, in violation of customary international law, Arts. 9 and **14** of the International Covenant on Civil and Political Rights, and Arts. XXVIII, XXV, and XXVI of the American Dec1aration on the Rights and Duties of Man. The Executive Order, as applied to the detained Petitioners, violates these and other binding obligations of the United States under International Law.

FIFTH CLAIM FOR RELIEF
(DUE PROCESS - FAILURE TO COMPLY
WITI! U.S. MILITARY REGULATIONS AND
INTERNATIONAL HUMANIT AIDAN LAW)

42. Petitioners incorporate all of the above paragraphs by reference.

43. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the rights accorded to persons seized by the United States Military in times of anned conflict, as established by, *inter alia*, the regulations of the United States Military, Artic1es 4 and 5 of Geneva Convention III, Geneva Convention IV, and customary international law.

SIXTH CLAIM FOR RELIEF
(WAR POWERS CLAUSE)

44. Petitioners incorporate all of the above paragraphs by reference.

45. By the actions described above, Respondents, acting under color of law, have exceeded the constitutional authority of the Executive and have violated and continue to violate the War Powers Clause by ordering the prolonged and indefinite detention of the detained Petitioners without Congressional authorization.

SEVENTH CLAIM FOR RELIEF
(SUSPENSION OF THE WRIT)

46. Petitioners incorporate all of the above paragraphs by reference.

47. To the extent the order of November 13, 2001, disallows any challenge to the legality of the Petitioners' detention by way of habeas corpus, the Order and its enforcement constitute an unlawful Suspension of the Writ, in violation of Article I of the United States Constitution.

VI
## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1. Grant Next Friend status, as it may be necessary;
2. Grant petitioners the appoinbnent of counsel, and such funding necessary to effectuate this;
3. Order the detained Petitioners released from Respondents' unlawful custody;
4. Order Respondents to allow counsel to meet and confer with the detained Petitioners, in private and unmonitored attorney-client conversations;
5. Order Respondents to cease all interrogations of the detained Petitioners, direct or indirect, while this litigation is pending;
6. Order the Respondents not conduct or pennit a Combatant Status Review Tribunal to be held in Petitioners' cases;
7. Order and declare the Executive Order of November 13, 2001, unlawful as a violation of the Fifth and Fourteenth Amendments to the United States Constitution;
8. Order and declare the Executive Order of November 13, 2001, unlawful as a violation of the Adminisiiative Procedures Act, 5 U.S.C. 9702;
9. Order and declare that the detained Petitioners are being held in violation of the Fifth and Fourteenth Amendments to the United States Constitution;

10. Order and declare the Executive Order of November 13, 2001, unlawful as a violation of customary international law, the International Covenant on Civil and Political Rights, and the American Declaration on the Rights and Duties of Man;

11. Order and declare that the detained Petitioners are being held in violation of customary international law, the International Covenant on Civil and Political Rights, and the American Declaration on the Rights and Duties of Man;

12. Order and declare that the detained Petitioners are being held in violation of the regulations of the Unhed States Military, the Geneva Conventions, and international humanitarian law;

13. Order and declare that the Executive Order of November 13, 2001, violates the War Powers Clause;

14. Order and declare that the provision of the Executive Order that bars the detained Petitioners from seeking relief in this Court is an unlawful Suspension of the Writ, in violation of Article I of the United States Constitution;

15. To the extent Respondents contest any material factual allegations in this Petition, schedule an evidentiary hearing, at which Petitioners may adduce proof in support afhis allegations; and

16. Grant such other relief as the Court may deem necessary and appropriate to protect Petitioners' rights under the United States Constitution and intemationallaw.

Dated: Washington, D.C.
Marchs,f, 2005

Respectfully submitted,

Couns-e1fuxPetitioner:

/Jlmes W. Beane Jr.
U.S. District Court for the District of Columbia Bar No. 444920
803 Florida Avenue, N.W.
Wasrnngton. D.C. 20001
(202) 257-3920 (tel)
(703) 354-3456 (fax)
e-mail: beane.law@verizon.net

Clive A. Stafford Smith**
Admitted in the States of Georgia, Louisiana & Mississippi'
636 Baronne StTeet
New Orleans, La. 70113
(504) 558 9867
e-mail: c1ivess@mac.com

* Signed by co-counsel 'Withpennission by James Beane.

** Mr. Stafford Smith has previously been admitted pro hac vice in connection 'Withthe Guantanamo Bay litigation

VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best afmy knowledge, information, and belief.

ExC-~ted on this ~~7'- day of March, 2005.

Clive A. Stafford Smith***

*** Counsel must sign the verification, rather than have it signed by a member ofthe D.C. bar, because this pleading is completed in the Secure Facility, and is not unclassified. Counsel has security clearance while local counsel does not, and cannot therefore review the pleading until is it unclassified. James W. Beane, Jr.

AUTHORIZATION

EXHIBIT A

NEXT

ALPHA, CELL 2005

MOROCCAN

TAREQ

MOROCCAN

Omar