~~SECRET//NOFORN~~

Filed with Classified
Information Security Officer
CISO _/s/ John Caplu_
Date _Aug 2, 2013_

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ABDULLATIF NASSER,<br><br>  Petitioner,<br><br>  v.<br><br>BARACK OBAMA, *et al.*,<br><br>  Respondents. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 05-764 (CKK)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**
(August 2, 2013)

On April 15, 2005, Abdullatif Nasser (ISN 244) ("Petitioner"), a Moroccan national detainee at the United States Naval Base at Guantanamo Bay, Cuba ("Guantanamo"), filed a petition for writ of habeas corpus with this Court. *See* Petition for Writ of Habeas Corpus, ECF No. [1]. Presently before the Court is Petitioner's [230] motion to compel discovery, which Respondents have opposed. Upon careful consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Court shall DENY Petitioner's motion to compel.

**I. LEGAL STANDARD**

Petitioner's motion is governed by the Case Management Order entered by Judge Thomas F. Hogan on November 6, 2008, as amended by Judge Hogan's Order dated December 16, 2008 (the "CMO").[1] Additionally, on September 30, 2011, the parties' filed a [216] Joint Status Report (the "September 30, 2011 Joint Status Report"), setting forth

---

[1] *See* Case Management Order, *In re Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C. Nov. 6, 2008), ECF No. [940]; Order, *In re Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C. Dec. 16, 2008), ECF No. [1315].

1

~~SECRET//NOFORN~~

~~SECRET//NOFORN~~

various categories of materials which Respondents agreed to search for and produce. On October 20, 2011, this Court issued an [217] Order ("October 20, 2011 Order"), which directed Respondents to produce all materials outlined in the Joint Status Report or otherwise required to be produced by the CMO. The Court's October 20, 2011 Order also adopted certain definitions further clarifying the parties' obligations under the CMO, which the Court shall reiterate below. For purposes of Petitioner's motion, the Government's relevant disclosure obligations under this regime are three-fold.

First, Section I.D.1 of the CMO delineates the scope of Respondents' ongoing obligation to disclose "exculpatory evidence" to Petitioner even in the absence of a specific request. Specifically, the Government must "disclose to the petitioner all reasonably available evidence in its possession that tends materially to undermine the information presented to support the government's justification for detaining the petitioner." CMO § I.D.1. The term "reasonably available" as used in Section I.D.1 includes, but is not limited to, traverses filed by other petitioners in Guantanamo habeas cases. *See* Order (Oct. 20, 2011), at 1. Other categories of information that are captured by the "reasonably available" standard include any attachments to those traverses, as well as any other evidence whatever the source that comes into the possession of those litigating Guantanamo habeas petitions. The term "exculpatory evidence" includes, but is not limited to, "any evidence or information that undercuts the reliability and/or credibility of the Government's evidence," such as "evidence that casts doubt on a speaker's credibility, evidence that undermines the reliability of a witness's identification of Petitioner, evidence that indicates a statement is unreliable because it is the product of abuse, torture, or mental or physical incapacity, as well as any material inconsistencies and statements." Oct. 20, 2011 Order at 1.

2

~~SECRET//NOFORN~~

Second, Section I.E.1 of the CMO requires the Government to disclose the following categories of information to Petitioner upon his request: "(1) any documents and objects in the government's possession that the government relies on to justify detention; (2) all statements, in whatever form, made or adopted by the petitioner that the government relies on to justify detention; and (3) information about the circumstances in which such statements of the petitioner were made or adopted." CMO § I.E.1. The phrase "circumstances in which such statements . . . were made or adopted" encompasses "all surrounding circumstances, including, but not limited to, the use of coercive tactics as well as inducements." Oct. 21, 2011 Order at 1-2. The term "in whatever form," as used in this Section "includes all forms (including audio or video), whether cumulative or not." *Id.* at 1. Categories of materials encompassed by this definition include, but are not limited to, notes of interrogators, reports from any and all agencies present at an interrogation, original statements as opposed to only summaries of those statements, and transcripts of any interrogations.

Third, Section I.E.2 of the CMO confers upon the Court the discretion to authorize additional "limited discovery" beyond what is required by Sections I.D.1 and I.E.1 upon a showing of "good cause." Requests for additional discovery must "(1) be narrowly tailored, not open-ended; (2) specify the discovery sought; (3) explain why the request, if granted, is likely to produce evidence that demonstrates that the petitioner's detention is unlawful; and (4) explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government." CMO § I.E.2 (internal citations and quotations omitted).

SECRET//NOFORN

## II. DISCUSSION

Petitioner filed his motion to compel discovery on January 1, 2013. *See* Pet'r's Mot. for Additional Discovery ("Pet'r's Mot."), ECF No. [230]. Respondents filed their opposition to Petitioner's motion on February 27, 2013. *See* Resp'ts' Opp'n to Pet'r's Mot. for Additional Discovery ("Resp'ts' Opp'n"), ECF No. [238]. Respondents also filed on February 27, 2013 a classified supplement to their opposition memorandum. Petitioner has not filed a reply memorandum, and, as the time for filing a reply has passed, the motion is ripe for the Court's adjudication.

Petitioner's motion requests additional discovery of three categories of materials: (1) all statements in any form (including audio or video) that have not been previously disclosed and that were made, adopted, or attributed by or to Petitioner that relate to the statements in the Factual Returns or are exculpatory, including statements made by other detainees on which Respondents rely to support their allegations that Petitioner is an enemy combatant or are exculpatory; (2) any documents, including but not limited to any interrogation logs or interrogation plans, that list or describe the date, time, place or circumstances of any interrogations of Petitioner; (3) all items collected from Petitioner upon his being taken into custody. Additionally, Petitioner seeks leave to propound four requests for admissions along with four associated interrogatories. For reasons explained more fully below, Petitioner's motion falls far short of satisfying the standard set forth in the CMO for obtaining discovery beyond that to which he is automatically entitled.

The Court shall first address Petitioner's document requests. Preliminarily, the Court observes that Respondents have already confirmed their compliance with all agreed upon and Court-ordered discovery requirements in this matter (with the exception of information

subject to pending motions for exception to disclosure under Section I.F. of the CMO).[2] *See* Resp'ts' Opp'n at 4; *see also* Resp't's Certification Pertaining to the Production of Exculpatory Information, ECF No. [223]. The Court assumes that Respondents' search and production of documents has been fully compliant with these requirements, as they have been explicated by the Court in this Memorandum Opinion, *supra* Part I.

Curiously, the first two of Petitioner's document requests – the requests for statements by Petitioner and other detainees and for documents such as interrogation logs or other documents listing the date, time, place, or circumstances Petitioner's interrogations – appear to seek nothing more than what has already been ordered to be produced in this matter and what Respondents have already represented has in fact been produced. *Compare* Pet'r's Mot. at 1-2 *with* CMO; Oct. 20, 2011 Order (ordering production of all materials outlined in the September 30, 2011 Joint Status Report or otherwise required to be produced by the CMO).[3] Because Petitioner does not demonstrate, or even allege, that Respondents' prior productions with respect to these categories of information were in some way inadequate, the Court must deny Petitioner's first two document requests on this ground.

Furthermore, to the extent Petitioner's first two requests are intended to capture a broader set of documents than those previously ordered and produced, Petitioner has failed to identify with specificity the types of documents sought and certainly has not explained – or even attempted to explain – how any such non-descript discovery would be likely to produce evidence that his detention is unlawful, or how such information will enable him to rebut the factual basis for his detention without unduly burdening the Government. *See* CMO § I.E.2.

---

[2] The Court shall address Respondents motions for exception to disclosure by separate order.
[3] In their opposition brief, Respondents again confirm that they have disclosed all forms of responsive statements and also explain that there were no responsive electronic, video, or audio recordings of statements by Petitioner or witnesses. Resp't's Opp'n at 5 n.1.

SECRET//NOFORN

While Petitioner conclusorily argues that courts have granted similar requests in the past in other detainee cases, Petitioner makes no effort to explain how the circumstances justifying certain additional discovery in any of those cases apply to the facts here. Absent more specific requests accompanied by meaningful factual explanation as to why the requested information would be likely to undermine the legality of Petitioner's detention in this case, the Court declines to award Petitioner additional discovery.

Petitioner's third document request seeks "[a]ll items collected from Petitioner upon his being taken into custody." Pet'r's Mot. at 3. In support of this request, Petitioner argues only that "[e]vidence taken by Petitioner where he was captured will be relevant to the Government's position that Petitioner was an enemy combatant." *Id.* This vague, conclusory assertion is woefully insufficient to satisfy the requirements of Section I.E.2 of the CMO. As an initial matter, Petitioner himself is presumably aware of the items in his possession at the time of his capture, yet he declines to even identify those items for the Court or to offer any explanation as to how discovery regarding those items would undermine the lawfulness of his detention.

Additionally, Petitioner fails to specify the details surrounding his capture. According to Respondents' classified supplement to their opposition memorandum, Petitioner was not captured by U.S. forces. Rather, he was captured by Northern Alliance forces and subsequently turned over to U.S. custody. It is would appear, therefore, that Respondents would not even be in possession of items collected from Petitioner at the time of his initial capture, which, according to the Amended Factual Return, included several hundred U.S. dollars and an AK-47 rifle. Further, Respondents represent that they have provided Petitioner's counsel color photographs of the items that were in Petitioner's

6
SECRET//NOFORN

SECRET//NOFORN

possession when he entered U.S. custody, as well as a picture of the log of the initial chain of custody of those items. Based upon the Court's review of Respondents' description of those items (which include a document with Arabic writing, bandages, and various medicine tablets), the Court agrees that Petitioner has failed to demonstrate that his counsel is entitled to physical access to the pictured items because Petitioner has provided no explanation whatsoever as to how viewing those items in person will demonstrate the unlawfulness of his detention or undermine the factual basis for his detention without undue disruption or burden to the Government. *See* CMO § I.E.2. Notably, the Government does not rely on Petitioner's possession of any of the pictured items as part of its case to justify Petitioner's detention; nor has Petitioner provided the Court with any reason to believe that the items themselves are exculpatory. For all of the foregoing reasons, Petitioner has failed to satisfy his burden under Section I.E.2 with respect to his third document request.

Finally, the Court turns to Petitioner's request for leave to propound requests for admissions and related interrogatories – each of which is designed to determine whether Respondents possess "credible evidence" that Petitioner aided in or had prior knowledge about the September 11, 2001 terrorist attacks; was personally responsible for harboring any person or organization responsible for those attacks; had or now has specific intent to harm the United States; or ever committed an overtly hostile act toward the United States. In support of all of these requests, Petitioner offers just one sentence:

> These requests are intended to elicit admissions by Respondents concerning Petitioner's lack of any active role in matters relating to the September 11, 2011 [*sic*], attacks on the United States, or during the period or in the hostilities that occurred in Afghanistan after that date, a determination that is centrally relevant in any event to the definition of enemy combatant ultimately adopted by this Court.

Petitioner fails to recognize, however, that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Al-Adahi v. Obama*, 597 F. Supp. 2d 38, 44 (D.D.C. 2009) (citing *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). Furthermore, it is the Government that bears the burden of proving that Petitioner is lawfully detained. *See Al Rabiah v. United States*, 658 F. Supp. 2d 11, 19-20 (D.C. Cir. 2009). And it is the Amended Factual Return which recites the bases for Petitioner's detention upon which the Government relies in this litigation.

It is Respondents' position that the lengthy narrative contained in that Amended Factual Return, with supporting documentation, demonstrates that Petitioner was part of al-Qaeda, Taliban, or associated forces, or otherwise provided support to those forces sufficient to justify detention. The merits of Respondents' position remain to be decided, but certainly, Petitioner has provided no grounds for imposing additional explanatory burdens on Respondents beyond those already governing this form of litigation. Further, especially in view of the fact that Respondents do not appear, at this stage, to be relying on any alleged direct involvement with the September 11, 2001 attacks to support their case for the legality of Petitioner's detention, the Court cannot perceive any scenario under which granting Petitioner leave to propound his proposed interrogatories would be "likely to produce evidence that demonstrates that [his] detention is unlawful" or "enable [him] to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government." CMO § I.E.2.

### III. CONCLUSION AND ORDER

In summary, Petitioner has failed to explain why the productions previously made by Respondents are inadequate or why granting him any of the discovery requested will enable

~~SECRET//NOFORN~~

him to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the Government. His motion must therefore be denied in accordance with Section I.E.2 of the CMO.

Accordingly, it is this 2nd day of August, 2013, hereby **ORDERED** that Petitioner's [230] motion to compel discovery shall be **DENIED**. The Court shall set a schedule for further proceedings in this matter upon resolution of Respondents' separately pending motions for exceptions to disclosure.

**SO ORDERED.**

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge